UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| John H. Cover, Jr.,<br><br>    Plaintiff,<br><br>  v.<br><br>OSF Healthcare System,<br><br>    Defendant. | Case No. 3:18-cv-50114<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

Plaintiff John Cover brings this suit against Defendant OSF Healthcare System ("OSF"), alleging discrimination on the basis of his age under the Age Discrimination in Employment Act of 1967 (ADEA). OSF now moves for summary judgment. For the following reasons, the Court grants summary judgment.

**I.    Procedural Background**

Before filing this lawsuit, Mr. Cover first filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on January 16, 2018. Dkt. 1. In this charge, he stated that his employer discriminated against him because of his age and retaliated against him after he complained about harassment and disciplinary actions. *Id.* On January 25, 2018, the EEOC issued its notice of dismissal and right to sue to Mr. Cover. *Id.*

On April 2, 2018, Mr. Cover filed a complaint in this Court, bringing claims of age discrimination under the ADEA and sex discrimination under Title VII of the Civil Rights Act of 1964. *Id.* at 3-4. He alleged that OSF had retaliated by

1

terminating him, failed to stop harassment, and subjected him to a hostile work environment. *Id.* at 4-5. Judge Durkin dismissed the complaint on January 9, 2020, for failure to state a claim. Dkt. 39 at 7. Judge Durkin dismissed Mr. Cover's sex discrimination claim because Mr. Cover never presented such a claim to the EEOC. *Id.* at 4-5. As for Mr. Cover's age claims, Judge Durkin dismissed those claims as well but gave Mr. Cover the opportunity to amend his complaint to allege "harassment or other adverse employment actions *because of* his age." *Id.* at 7.

Mr. Cover amended his complaint on February 3, 2020. Dkt. 40. OSF filed a motion to dismiss, Dkt. 45, which was denied by Judge Durkin on July 14, 2020. Dkt. 64. The parties engaged in settlement negotiations and seemed to come to an agreement in late 2020, but then Mr. Cover "backed out simply because he wanted a better deal." Dkt. 92 at 3-4. The parties proceeded through discovery for nearly a year and a half. *See* Dkt. 141. OSF now moves for summary judgment. Dkt. 146.

## II. Legal Standard

### A. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must construe the "evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Rickher v. Home Depot, Inc.*, 535 F.3d 661, 664 (7th Cir. 2008). But "[w]here two parties tell two different stories, one of which has no support in the record, the Court does not adopt the

2

unsupported version of the facts." *Karim v. Obaisi*, No. 14 C 1318, 2017 U.S. Dist. LEXIS 149383, at *10 (N.D. Ill. Sept. 14, 2017). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby*, 477 U.S. at 248; *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). "Speculation is insufficient to withstand summary judgment." *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1127 (7th Cir. 1996). Indeed, "the nonmoving party must do more than simply show there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Summary judgment acts as a "threshold inquiry of determining whether there is the need for a trial." *Liberty Lobby*, 477 U.S. at 250. Mr. Cover argues that he is entitled to a jury trial under the Seventh Amendment because he properly filed a complaint, Dkt. 151 at 12, but there is no need for a jury trial if there are no genuine disputes of fact that can be resolved only by the jury. *See Liberty Lobby*, 477 U.S. at 250. Properly applied, summary judgment does not violate the Seventh Amendment right to a jury trial. 11 James Wm. Moore et al., *Moore's Federal Practice – Civil* § 56.06 (3d ed. 2023).

Summary judgment is also a very different standard from a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Mr. Cover dedicates a portion of his response to arguing that he made plausible allegations in his complaint, citing to cases that decided motions to dismiss, and quoting liberally from Judge Durkin's order denying a motion to dismiss. Dkt. 151 at 6-9, 12. However, the plausibility

3

standard is irrelevant at this point in the case. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990) ("[The opinion] is of no relevance here, since it involved not a Rule 56 motion for summary judgment but a Rule 12(b) motion to dismiss on the pleadings."). In fact, the undersigned has a standing order about not citing cases decided in different contexts.

### B. Local Rule 56.1

"On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). The statements serve a valuable purpose: they help the Court in "organizing the evidence and identifying disputed facts." *Fed. Trade Comm'n v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). Local Rule 56.1 requires a party seeking summary judgment to file an accompanying statement of facts, with numbered paragraphs and citations to the record supporting those facts. *See* LR 56.1(d). "Factual allegations not properly supported by citation to the record are nullities." *Malec v. Sanford*, 191 F.R.D. 581, 583 (N.D. Ill. 2000). In addition, these factual allegations "should not contain legal argument." LR 56.1(d)(4).

The party opposing summary judgment must "admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact." LR 56.1(e)(2). To dispute a fact, the party opposing summary judgment must, in its response, "cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." LR 56.1(e)(3). If disputing only part of an asserted fact, "it must specify which part of

4

the asserted fact is admitted and which part is disputed." *Id.* The opposing party's response "may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made." LR 56.1(e)(2). The response also "may not assert legal arguments except to make an objection." *Id.*

To assert new facts, the opposing party must file its own statement of facts. LR 56.1(b)(3). The opposing party's statement of additional facts must follow the same form, with numbered paragraphs and citations to the record supporting those facts. LR 56.1(b)(3), (d). And like the statement of facts, there should be no legal argument in the additional factual allegations. *See id.*

"District courts are 'entitled to expect strict compliance' with Rule 56.1, and do not abuse their discretion when they opt to disregard facts presented in a manner that does not follow the rule's instructions." *Gbur v. City of Harvey*, 835 F. Supp. 2d 600, 606-07 (N.D. Ill. 2011); *see also Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). The requirements of Local Rule 56.1 apply equally to *pro se* plaintiffs. *See Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").[1] "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3); *see also Waldridge*, 24 F.3d at 922. Similarly, facts not otherwise included in the statement of facts may be ignored. *See Cichon v. Exelon Generation*

---

[1] The Court fully explained Rule 56.1 to Mr. Cover, including the consequences of failing to comply. Dkt. 145 ("The Court fully explained the summary judgment procedure to Mr. Cover.").

5

*Co.*, 401 F.3d 803, 810 (7th Cir. 2005). The Court is not required to scour the record for evidence or factual disputes. *Waldridge*, 24 F.3d at 921-22.

### III. Factual Background

Before summarizing the facts of this case, the Court must sort through the disputes in the statement of facts. OSF submitted its statement of facts following LR 56.1. *See* Dkt. 148 ("SOF"). Mr. Cover submitted a response, but many of his responses fail to cite to evidence in the record, make arguments, and assert new (often unrelated) facts. *See* Dkt. 152. Mr. Cover also submitted a statement of additional facts that contains a mix of legal arguments and quotes of OSF policies, webpages, and cases, *see* Dkt. 153, but presents no facts material to the analysis in this opinion.

For the facts cited in this opinion, Mr. Cover's responses fall into one or more of several categories. First, there are the facts admitted by Mr. Cover.[2] Then, there are the many responses that assert a new fact with no citation to the record.[3] Some of these include disagreeing with unrelated portions of OSF's cited evidence.[4] In a similar vein, Mr. Cover also sometimes disagrees with the content of what someone said, rather than the fact that someone said it, again with no citation to the record.[5] Because these responses lack evidentiary support, Mr. Cover has not properly disputed those facts, so those facts are admitted. *See* LR 56.1(e)(3). Last, there are

---

[2] SOF 10, 14, 30, 52, 55, 57, 76, 77. *See* Dkt. 152 at 3-4, 9, 19-21, 28. Mr. Cover omitted SOF 71 in his response, *see id.* at 26, so that counts as an admission. *See Waldridge*, 24 F.3d at 922.
[3] SOF 9, 11, 16, 24, 25, 34, 35, 40, 42, 48, 53, 56, 58, 62, 63, 70, 74. *See* Dkt. 152 at 3-4, 7-8, 11-12, 14-15, 17, 19-23, 26, 27.
[4] SOF 40, 52, 59. *See* Dkt. 152 at 14, 19, 21-22.
[5] SOF 75. *See* Dkt. 152 at 27.

6

several responses where Mr. Cover puts forth legal arguments.[6] Such arguments are not permitted by the rules, *see* LR 56.1(e)(2), so Mr. Cover has not properly disputed those facts, and those facts are also admitted.

Here is a summary of the facts. Mr. Cover was employed by OSF starting September 2014. SOF 9. He was an "Intake Representative" in the Rockford Home Medical Equipment ("HME") department. *Id.* His first supervisor was Karen Simpson, who managed the Rockford HME department until November 2014. SOF 10. After Ms. Simpson, William Linn became Mr. Cover's manager, but he was not physically at the Rockford office on a regular basis. *See* SOF 11. Given Mr. Linn's physical absence, Mr. Cover saw Michelle Roman, one of his peers in the HME department, as filling the role of "department supervisor" in some capacity, *see* Dkt. 151 at 2, 6, 8, but Ms. Roman was never assigned to supervise Mr. Cover, SOF 16. After Mr. Linn, Garret Rickard became the manager of the Rockford department. *See* SOF 14.

Mr. Cover describes his experience at OSF as "fractured and unstructured." SOF 38, 40. In particular, he alleges that Ms. Roman subjected him to "ridicule, foul language, and name calling that included derogatory comments." Dkt. 151 at 8. These insults included "moron," "stupid as a rock," "brainless," "idiot," and "old man." *Id.* at 3, 8. Mr. Cover expressed his concerns about the work environment at the Rockford HME office through various channels in OSF. *See* SOF 27, 30, 34-35, 38, 40-42, 47, 52, 55-56, 58. His complaints were also in response to the discipline

---

[6] SOF 26, 27, 38, 41, 42, 46, 47, 48, 53, 59, 62, 63, 64, 72, 74. *See* Dkt. 152 at 8-9, 13-17, 19, 21-24, 26-27.

7

that Mr. Cover received at OSF, *see, e.g.*, SOF 25, 30, 34, so some background about that discipline is necessary here.

On April 21, 2015, Mr. Cover received his first formal disciplinary action (a written reprimand) based on customer complaints about an argumentative employee. SOF 22;[7] Dkt. 148-2 at 135:8-9; Dkt. 148-14. Mr. Cover tried to explain to his supervisor, Mr. Linn, that the customer had confused Mr. Cover with another "John C." that worked in the department, but to no avail. Dkt. 148-2 at 135:5-8, 137:9-15, 139:7-15; *see* SOF 22.

On July 22, 2015, Mr. Cover received a second written reprimand (the "Level II discipline") because of an incident earlier in the month when other employees had claimed that Mr. Cover yelled at a customer on the phone, made a dismissive hand gesture at a coworker, and had a loud argument with that coworker. SOF 24. Mr. Cover challenged the Level II discipline, and he met in person with Carolyn Dalen from Human Resources and by phone with Tom Williams, another supervisor. SOF 25, 38; Dkt. 148-2 at 143:10-12, 20-23.

In addition to the meeting with Ms. Dalen and Mr. Williams, Mr. Cover called OSF's "Integrity Line" complaint hotline. SOF 30. During that call, Mr. Cover spoke about the incident that led to the Level II discipline and about how Ms. Roman and another coworker spoke in a "disrespectful manner," creating a "hostile work environment." SOF 31;[8] Dkt. 148-18 at 2.

---

[7] Mr. Cover disputes a different part of SOF 22. *See* Dkt. 152 at 6.
[8] Mr. Cover disputes SOF 31 by providing additional quotes to the Integrity Line report (with support), asserting new facts (without support), and making additional arguments. *See* Dkt. 152 at 10-11. The additional quotes do not contradict SOF 31. *See id.* The assertion that Mr. Cover used

8

In mid-August 2015, Mr. Cover submitted a "Fair Treatment Form" to Mr. Linn, in which he requested removal of both disciplinary actions to allow him to transfer to another position within OSF. SOF 34; Dkt. 148-19 at 2. He also stated that the office environment had "deteriorated to that of ridicule and frequent personal attacks toward me" and that the negativity in the office made the environment "tense and unproductive." SOF 34. Mr. Cover also spoke to Mr. Linn on the phone regarding the Fair Treatment Form. SOF 35.

On August 31, Mr. Cover wrote a letter to Mr. Williams. SOF 38. In the letter, Mr. Cover stated that he had been subject to ridicule, foul language, name calling, and harassment, but he did not explain or imply that the harassment was based on age. *See id.*; Dkt. 148-7. On October 1, Mr. Cover sent a letter to J.J. Guedet, the next level individual above Mr. Williams. SOF 40. The letter contained the same language about harassment that was used in the letter to Mr. Williams. *See* Dkt. 148-20; SOF 40. This led to a phone call with Mr. Guedet on October 22. SOF 42; Dkt. 148-2 at 192:2.

The next day, on October 23, 2015, Mr. Cover wrote a letter to August "A.J." Querciagrossa, then-president of OSF Home Care Services. SOF 47. The purpose of the letter was to report an incident regarding Ms. Roman "having a loud and negative conversation in front of a third-party employee." SOF 48; Dkt. 148-23 at 4. Mr. Cover then met with Mr. Querciagrossa on November 7, 2015. SOF 52.

---

more detail in his call is not supported. *See id.*; Dkt. 148-18. The assertion that the Integrity Line report doesn't mention the disciplinary actions is partially supported: the report does not discuss the first one but does discuss the second (calling it a "write-up"). *See* Dkt. 148-18.

9

In December 2016, over a year later, Mr. Cover began a medical leave, during which he emailed Mr. Querciagrossa on January 18, 2017. SOF 56. In this email, he said that the "negativism and the hostile work environment" had not improved. Dkt. 148-25 at 1. He also wrote that he couldn't succeed at OSF "if I continue working in my current position as I feel I have been unfairly labeled and the environment is too hostile." *Id.*; SOF 58. Like the letters before, Mr. Cover did not explain what made the environment hostile or make any reference to age-based harassment. SOF 59. Mr. Querciagrossa referred the complaint to HR. *See* SOF 61-62. After Mr. Cover returned from his medical leave, Ms. Dalen met with him on February 6, 2017, to discuss his concerns. SOF 62. During this conversation, Ms. Dalen also explained to Mr. Cover that his Level II discipline had not been given before his medical leave and would be given now that he had returned. SOF 63; Dkt. 148-29 Ex. A.

Six days later, on February 12, 2017, Mr. Cover emailed his resignation. SOF 72. Mr. Cover was paid in lieu of coming into work for his two-week resignation notice period. SOF 75.

IV.     **Analysis**

    **A. ADEA**

"The ADEA protects workers 40 years of age and older from age-based employment discrimination." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018). Because the ADEA uses language identical to Title VII and shares a common purpose, courts often use Title VII and ADEA case law interchangeably.

*See Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996); 4 N. Peter Lareau, *Labor and Employment Law* § 118.01 (2023).

The amended complaint is not entirely clear as to what claims or theories under the ADEA Mr. Cover alleges. In his introduction, Mr. Cover lists age discrimination, hostile work environment, and retaliation, and he also mentions constructive discharge once later in his brief. Dkt. 151 at 2, 11. Regardless of which ADEA claims are inferred from the amended complaint, the Court finds that none of them survive summary judgment.

### 1. Hostile Work Environment

Although it hasn't decided the question, the Seventh Circuit has assumed the viability of a hostile work environment claim under the ADEA. *See, e.g.*, *Tyburski v. City of Chicago*, 964 F.3d 590 (7th Cir. 2020); *Bennington v. Caterpillar Inc.*, 275 F.3d 654 (7th Cir. 2001). A hostile work environment claim has four requirements: (1) that the plaintiff was subject to unwelcome harassment, (2) that the harassment was based on age, (3) that the harassment was "sufficiently severe or pervasive so as to alter the conditions of employment and create a hostile or abusive atmosphere," and (4) that there is a basis for employer liability. *Tyburski*, 964 F.3d at 601 (quoting *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005)).

For the first element, OSF concedes that there is a question of fact regarding "unwelcomeness." Dkt. 147 at 8. For the following reasons, the Court finds that there is no genuine dispute of material fact for the second and third elements—that is, no reasonable jury could find that there was age-based harassment severe or pervasive enough to create a hostile atmosphere.

11

For harassment to be actionable under the ADEA, it must go beyond "[m]ere personal animosity or juvenile behavior by coworkers." *Tyburski*, 964 F.3d at 602. The harassment must be based on age. *See id.* at 601. Swearing or using disrespectful language is not necessarily tied to a person's age. *Brooks v. Avancez*, 39 F.4th 424, 441 (7th Cir. 2022). "Even insults specifically referencing age do not necessarily rise to the level of actionable harassment." *Tyburski*, 964 F.3d at 602. Courts consider "all of the circumstances, including frequency and severity of the conduct, whether it is humiliating or physically threatening, and whether it unreasonably interfered with an employee's work performance." *Id.* at 601-02.

Mr. Cover alleges that Ms. Roman used foul language and ridiculed him. Dkt. 151 at 2-3. He lists the derogatory comments "moron," "stupid as a rock," "idiot," and "brainless," as well as "old man" as a comment about his age. *Id.* at 3.

Taking the list of derogatory comments first, although calling someone stupid or brainless can certainly be hurtful, it is not an age-based insult. Compare this to a phrase like "new blood," which courts don't consider to be enough to show age-based discrimination. *E.g.*, *Beatty v. Wood*, 204 F.3d 713, 716-17 (7th Cir. 2000). This is especially true if no context has been provided. *Id.* Mr. Cover merely states that Ms. Roman called him stupid, brainless, etc., but he does not provide context that would allow for these words to show age discrimination. Mr. Cover repeatedly argues that he shouldn't have to point to the explicit use of the word "age," *e.g.*, Dkt. 151 at 1, but there must be evidence for a reasonable jury to conclude that the insults were tied to age. There is no such evidence in this case.

As for "old man," that phrase alone is not sufficient for actionable harassment. *See Tyburski*, 964 F.3d at 602; *see also, e.g.*, *Koren v. Eagle Ins. Agency, Inc.*, No. 03 C 4261, 2005 U.S. Dist. LEXIS 46576, at *15-16 (N.D. Ill. Mar. 11, 2005); *Ingram v. NWS, Inc.*, No. 92 C 8339, 1997 U.S. Dist. LEXIS 17190, at *20 (N.D. Ill. Oct. 21, 1997). Mr. Cover merely repeats that Ms. Roman called him "old man," but he does not provide any evidence as to the context or frequency of this name calling. *See, e.g.*, Dkt. 151 at 3. In cases when courts have found age-based harassment, the allegations include, for example, that the name calling happened "up to a half-dozen times a day" and the manager made physical threats. *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 438 (5th Cir. 2011). By contrast, in this case, there isn't enough evidence for a reasonable jury to find that level of harassment.

The lack of detail also plagues Mr. Cover's argument that the environment was "hostile." He alleges that the harassment made the environment hostile and led to "extreme duress," Dkt. 151 at 5, but he cites no evidence for support and does not provide any examples to demonstrate how he suffered from extreme duress. Similarly, at another point in his brief, Mr. Cover says that he was subject to "a relentless and ruthless campaign" but has nothing to support this assertion. There is not enough evidence for a reasonable jury to connect the dots from "old man" to an objectively "hostile environment." *See Brooks*, 39 F.4th at 441-42 (finding "broad generalizations" about being called "old" and "slow" insufficient to constitute a hostile work environment).

13

In addition, there is no evidence of harassment so severe and pervasive that it affected Mr. Cover's work performance. OSF argues that Mr. Cover's own behavior interfered with his work performance, unrelated to Ms. Roman's comments, Dkt. 147 at 9, and Mr. Cover does not argue otherwise.

Given the lack of evidence of severe and pervasive age-based harassment that created a hostile atmosphere or affected Mr. Cover's work performance, the Court need not address the last element of employer liability. *See Brooks*, 39 F.4th at 443.

### 2. Retaliation

"To survive summary judgment on a timely retaliation claim, plaintiff must offer evidence of: '(1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two.'" *Skiba v. Ill. Cent. R.R.*, 884 F.3d 708, 718 (7th Cir. 2018) (quoting *Baines v. Walgreen Co.*, 863 F.3d 656, 661 (7th Cir. 2017)). The Court finds no genuine dispute of fact as to any of these elements.

#### a. Statutorily Protected Activity

Statutorily protected activity "requires more than simply a complaint about some situation at work, no matter how valid the complaint might be." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 838 F.3d 888, 901 (7th Cir. 2016); *Skiba*, 884 F.3d at 718. The complaint must indicate that the discrimination occurred on the basis of age (or another protected class). *Skiba*, 884 F.3d at 718. If an employee doesn't indicate that connection to age, the employee needs to provide enough facts to infer that there is a connection to age. *See id.* Otherwise, general complaints of discrimination

14

or harassment do not constitute a protected activity sufficient for a retaliation claim. *See id.*

For example, in *Gleason v. Mesirow Financial, Inc.*, the Seventh Circuit found that an employee's complaint about a manager's "overbearing behavior" that included "yelling, slamming down the phone, making nasty comments about clients, [and] talking down to his fellow workers" did not raise "*specific* concerns or allegations of sexual harassment." 118 F.3d 1134, 1136 (7th Cir. 1997). Similarly, in *Skiba*, the Seventh Circuit concluded that describing a supervisor as "abusive" because he "'berated, badgered, and disrespected' his subordinates" was not enough for a retaliation claim under the ADEA. 884 F.3d at 718-19 (alterations omitted).

OSF argues that Mr. Cover did not complain to anyone that he was on the receiving end of age-based discrimination. Dkt. 147 at 14. Mr. Cover responds that neither OSF policy nor the law requires evidence of the explicit use of the word "age." *E.g.*, Dkt. 151 at 1-3, 7-8, 10. But the issue isn't whether the word "age" was ever used. The issue is whether Mr. Cover provided enough information in his complaints for OSF to understand that Mr. Cover believed he was facing age-based discrimination. *See Skiba*, 884 F.3d at 718-19; *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006).

Mr. Cover did *not* complain about age-based harassment in his written response to his Level II discipline, letter to Mr. Williams, letter to Mr. Guedet, phone call with Mr. Guedet, email to Mr. Querciagrossa, meeting with Mr. Querciagrossa, meeting with Ms. Dalen, or resignation email. SOF 26, 38, 41-42, 46-

15

48, 53, 59, 64, 72. The Integrity Line report also does not include mention of Ms. Roman's specific comments. SOF 33.[9] The factual record shows that Mr. Cover used only general labels like "harassment" or "name calling," and he never provided detail or context to explain the phrase "hostile work environment" in his communications. *E.g.*, Dkt. 148-18 at 1-3; Dkt. 148-19 at 2; Dkt. 148-7; Dkt. 148-20; Dkt. 148-29 ¶¶ 11, 18, Ex. A. These phrases give no indication of discrimination based on age. Even if it were age discrimination, there is no evidence for a reasonable jury to find that Mr. Cover made OSF aware of that.

>  b. *Materially Adverse Action*

For federal antidiscrimination statutes, adverse employment actions generally fall into three categories: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce future career prospects; and (3) unbearable changes in job conditions, such as a hostile work environment or conditions amounting to constructive discharge." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453-54 (7th Cir. 2011). "To be actionable, an employment action 'must be a significant change in employment status . . . or a decision causing a significant change in benefits.'" *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 980 (7th Cir. 2014) (quoting *Lewis v. City of Chicago*, 496 F.3d 645, 653 (7th Cir. 2007)) (alteration in original).

---

[9] Mr. Cover disputes SOF 33 by referencing his responses to SOF 31 and 32. *See* Dkt. 152 at 11. It's not entirely clear what part of those responses apply, especially because he admitted SOF 32. Regardless, the Integrity Line report does not mention the specific insults, *see* Dkt. 148-18 at 2-3, and Mr. Cover does not cite to evidence that says otherwise.

16

A materially adverse action for a retaliation claim "must be severe enough to dissuade a reasonable employee from exercising statutory rights." *Barton*, 662 F.3d at 456. This standard is "somewhat more forgiving" than for a general discrimination claim, but the Court finds that there is not sufficient evidence for a reasonable jury to find a materially adverse action.

Mr. Cover suffered no suspension, demotion, or loss of pay. SOF 70-71. In his brief, Mr. Cover argues that he suffered three adverse employment actions: he was not allowed to transfer to another position, he "was not allowed to complete his notice," and he was terminated. Dkt. 151 at 10.

For denying Mr. Cover the opportunity to transfer to another position, Mr. Cover does not cite any evidence about what better positions he would have pursued, so at most the evidence supports a lateral transfer to a subjectively better position. Courts have generally found that denial of a request for a lateral transfer to a position that might be subjectively better for the employee is not a materially adverse action. *See, e.g.*, *Chaib v. Indiana*, 744 F.3d 947, 984 (7th Cir. 2014), *overruled on other grounds by Ortiz*, 834 F.3d 760; *Han v. Whole Foods Mkt. Grp., Inc.*, 44 F. Supp. 3d 769, 787 (N.D. Ill. 2014); *Evans v. Ill. Dep't of Hum. Servs.*, No. 15 C 4098, 2017 U.S. Dist. LEXIS 91908, at *8 (N.D. Ill. June 15, 2017).

For the second alleged adverse action, Mr. Cover doesn't explain "not allowed to complete his notice" any further. *See* Dkt. 151 at 10. OSF also does not address this in its reply brief. *See* Dkt. 155 at 14-15. It appears that this refers to Mr. Cover being told to not come into work during his two-week resignation notice period. *See*

17

SOF 75-77. Although Mr. Cover was not required to work during this time, he was still paid. SOF 75. In cases where the employee missed out on wages that would have been earned for working during the notice period, courts have found that employer prematurely terminated the employee. *E.g.*, *Rodriguez v. Wet Ink, LLC*, No. 08-cv-00857, 2012 U.S. Dist. LEXIS 44464, at *25-26 (D. Colo. Mar. 30, 2012). But where the employee is still compensated despite not working after giving notice of resignation, courts have not found an adverse employment action. *E.g.*, *Wynn v. Paragon Sys.*, 301 F. Supp. 2d 1343, 1354 (S.D. Ga. 2004); *Eichenholz v. Brink's Inc.*, No. 16-cv-11786, 2019 U.S. Dist. LEXIS 35522, at *16-17 (D. Mass. Mar. 6, 2019). For Mr. Cover, because there was no loss of pay for the two weeks, OSF asking him to not work during that time is not an adverse employment action.

Last, Mr. Cover alleges that he was terminated. Mr. Cover resigned from OSF. SOF 72. Voluntary resignation, unlike termination, is not an adverse employment action. *See Stamey v. Forest River, Inc.*, 37 F.4th 1220, 1230 (7th Cir. 2022). Mr. Cover also alleges that he was constructively discharged, Dkt. 151 at 11, but the facts do not support that either.

"A constructive discharge occurs in the extraordinary case when an employee suffers 'working conditions so intolerable that a reasonable person would have felt compelled to resign.'" *Stamey*, 37 F.4th at 1224-25 (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)). A constructive discharge claim has two elements. First, the employee must show that the work environment was intolerable. *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010). Second, the employee

must show that seeking redress from the employer would have been futile. *Stamey*, 37 F.4th at 1225.

If an employee quits because of alleged discriminatory harassment (as opposed to because of the employer acting like the employee will be terminated), the working conditions must be "even more egregious than that required for a hostile work environment claim." *Chapin*, 621 F.3d at 679; *Stamey*, 37 F.4th at 1225. Because there is no evidence to support that Mr. Cover experienced a hostile work environment, there is no evidence that the work environment was so intolerable that it would compel a reasonable person to resign. And without the first element, there is no need for the Court to address whether seeking redress would have been futile. *See Chapin*, 621 F.3d at 681.

### c. Causal Connection

With no statutorily protected activities and no materially adverse actions, there's no causal question to be answered. Even if Mr. Cover's complaints contributed to any of the alleged adverse actions, that doesn't satisfy the causal connection needed for a retaliation claim. Retaliation must be a but-for cause of a materially adverse action. *Barton*, 662 F.3d at 455-56. It's not enough for retaliation to be a contributing factor. *Id.*

Mr. Cover argues that the denial of transfer was a result of the Level II discipline, which was unrelated to Mr. Cover's complaints about Ms. Roman. *See* Dkt. 151 at 6. Similarly, Mr. Cover resigned because he was told he was going to receive the Level II discipline. *See* SOF 74. As for Mr. Cover's resignation notice period, the evidence regarding why OSF asked Mr. Cover to not come in for those

19

two weeks is slim to none, *see* SOF 75-77, so no jury could make reasonable inferences as to why OSF made that decision. Even if a jury could conclude that Mr. Cover's complaints were a contributing factor, he has offered no evidence of but-for causation.

### B. Title VII

As described in the procedural summary, following Mr. Cover's initial complaint, this Court dismissed the sex discrimination claim because Mr. Cover never presented such a claim to the EEOC. Dkt. 39 at 4-5. In that order, the Court granted Mr. Cover leave to amend his allegations of adverse employment actions because of Mr. Cover's age. *Id.* at 7. OSF drops this detail in noting that Mr. Cover's amended complaint does not include a sex discrimination claim and renewing OSF's timeliness defense. *See* Dkt. 147 at 14-15. Regardless, Mr. Cover has no live Title VII claim for sex discrimination.

## V. Conclusion

The standard of summary judgment requires more than simply saying there was harassment. The Court finds that, based on the factual record in this case, no reasonable jury could find in favor of Mr. Cover on his ADEA claims. OSF's motion for summary judgment is granted. This case is dismissed with prejudice.

Date: October 6, 2023

_____
Honorable Iain D. Johnston
United States District Judge